Submitted on record and briefs October 30, 2007, reversed and remanded
February 13, 2008

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# KEITH DELVIN TYLER,
*Defendant-Appellant.*

Tillamook County Circuit Court
051165; A130370

178 P3d 282

James N. Varner filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of possession of methamphetamine. ORS 475.894. On appeal, he assigns error to the trial court's denial of his motion to suppress evidence obtained after he consented to a search of his trailer. As he did at trial, he argues that the discovery of the evidence resulted from a violation of his rights and that the state failed to show that the causal link between that violation and the discovery was so attenuated that the evidence was nonetheless admissible. We agree with defendant. We therefore reverse and remand.

We relate the facts as found by the trial court and supported by evidence. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). At around 7:50 a.m. on August 17, 2005, a Tillamook police officer responded to a report that an unfamiliar trailer was parked on a residential street and that a man and a woman were wandering nearby. When he arrived at the scene, the officer saw that the trailer was attached to a pickup truck, but recognized neither vehicle. He approached the trailer and knocked on its door. Defendant answered. The officer recognized him from previous contacts but was unaware that he was on probation. In response to the officer's inquiries, defendant explained that he was waiting for a shop to open so that he could have a tire fixed and that his girlfriend was with him inside the trailer. The officer asked the girlfriend to come out of the trailer, and she complied.

The officer asked defendant and his girlfriend for identification, which each provided. He then contacted a dispatch operator by radio and requested a background check. While the officer was waiting for the response, defendant and his girlfriend waited nearby. Shortly afterward, the dispatch operator informed the officer that both defendant and his girlfriend were on probation and that each was prohibited from having contact with known drug users. The dispatch operator also told the officer that he believed that each was prohibited, by another condition of probation, from having any contact with the other—but that he would have to confirm that fact with defendant's probation officer.

Acting on the information that defendant may have been in violation of a no-contact order, the officer handcuffed defendant and had him sit in the back of the patrol car. Because defendant knew that his probation agreement had been amended to allow him to have contact with his girl-friend, he assumed that he would be released as soon as his probation officer confirmed that fact, although he did not convey his assumption to the officer.

Before hearing back from the dispatch operator, the officer approached defendant, who was still in handcuffs and seated in the patrol car, and asked him for consent to search the trailer. Believing that he could not refuse because of a random search clause in his probation agreement, defendant responded, "[Y]es, go ahead." The ensuing search yielded the methamphetamine that led to defendant's arrest and conviction.

Approximately five to ten minutes later, defendant's probation officer contacted the officer and told him that defendant and his girlfriend were, in fact, permitted to have contact with each other.

Defendant was charged with possession of methamphetamine. In his pretrial motion to suppress, he argued that the officer's actions constituted a "stop," thereby effecting a seizure of his person; that, at the time of the seizure, the officer lacked reasonable suspicion of criminal activity, making that seizure unlawful; and that his consent was a product of the unlawful seizure, rendering all evidence discovered as a result of the search inadmissible. The trial court denied the motion, concluding that defendant's consent was only tenuously related, if related at all, to the unlawful seizure. The jury returned a verdict of guilty.

■ On appeal, the state concedes that, when the officer asked defendant for his identification and contacted the dispatch operator, a stop occurred, and that, because the officer did not have reasonable suspicion that defendant had engaged in (or was about to engage in) unlawful activity, the stop violated defendant's right to be free from unreasonable search and seizure under Article I, section 9, of the Oregon Constitution. We agree and accept that concession. *See State v. Hall*, 339 Or 7, 19, 115 P3d 908 (2005) (stop occurs when

officer radios dispatch operator). The state argues, however, that any causal connection between that illegality and defendant's consent is too tenuous to require suppression because defendant consented due to his belief that he was required to do so as a condition of his probation, and not because of any police conduct. As explained below, we disagree.

 The rationale for suppressing unlawfully obtained evidence under Oregon law is remedial—that is, its purpose is to restore the defendant to the same position as if the government had stayed within the law. *State v. Davis*, 295 Or 227, 233-34, 666 P2d 802 (1983). Thus, "the critical inquiry is whether the state obtained the evidence sought to be suppressed as a result of a violation of the defendant's rights under Article I, section 9." *Hall*, 339 Or at 24. The Supreme Court has provided the analytical framework for determining whether the connection between unlawful police conduct and incriminating evidence requires suppression:

> "After a defendant shows a minimal factual nexus between unlawful police conduct and the defendant's consent, then the state has the burden to prove that the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct. Deciding whether the state has satisfied that burden requires a fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection between the unlawful police conduct and the defendant's consent. A causal connection requiring suppression may exist because the police sought the defendant's consent solely as the result of knowledge of inculpatory evidence obtained from unlawful police conduct. A causal connection requiring suppression also may exist because the unlawful police conduct, even if not overcoming the defendant's free will, significantly affected the defendant's decision to consent. Although determining the existence of such a causal connection requires examination of the specific facts at issue in a particular case, we view several considerations to be relevant to that determination, including (1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstances—such as, for example, a police officer informing the defendant of the right to refuse consent—that mitigated the effect of the unlawful police conduct."

*Id.* at 34-35. This paragraph, supplemented by other parts of the opinion, yields a framework consisting of a sequence of inquiries. We must first determine whether defendant has established a "minimal factual nexus" between the unlawful stop and the consent. *Id.* at 25. That nexus exists if there is a "but for" relationship between the unlawful stop and defendant's consent. *Id.* Once that nexus is established, the burden shifts to the state. *Id.*

The state must then establish *either* that the consent would have occurred "independent of" the illegality (that is, it inevitably would have occurred through the exercise of lawful police procedures, or it was obtained not only as the result of illegality, but also as the result of a chain of events that did not include any illegality, *id.*) *or* that the connection between the unlawful stop and the consent is attenuated. *Id.* at 34-35. If the state can establish "independence," the consent is not tainted, and the evidence that it leads to is admissible. If the state cannot establish independence, though, it must prove attenuation; that is, it must prove that the causal connection between the illegality and the consent is *not* "[a] causal connection requiring suppression." *Id.* at 35.

There are two such types of connection, and clearly the state must disprove both; if either causal connection requiring suppression exists, then (tautologically) suppression must follow. One kind of causal connection that the state must disprove is "exploitation"; the state must prove that the police did not "[seek] the defendant's consent solely as the result of knowledge of inculpatory evidence obtained from" the prior illegal conduct. *Id.* The second kind of causal connection that the state must disprove is one based on conduct that, "even if not overcoming the defendant's free will, significantly affected the defendant's decision to consent." *Id.* Factors that the state might use to prove attenuation—that is, to prove lack of a causal connection requiring suppression—include the amount of time that elapsed between the unlawful conduct and the request for consent and the presence of intervening or mitigating circumstances. *Id.*

In the present case, the parties agree that defendant has carried his burden of establishing a "but for" relationship

between the unlawful stop and defendant's request for consent. The chain of events leading to that consent would never have started had the officer not unlawfully detained defendant. Thus, the burden shifts to the state.

The state does not contend, nor would the facts support the contention, that the evidence inevitably would have been discovered even if the officer had simply left the scene after looking over defendant's identification, nor that some sequence of events containing no unlawful conduct led independently to the request for consent. The state's case, like the trial court's decision, rests on attenuation. In particular, its case rests on the argument that defendant's voluntary consent vitiated the effect of the police illegality.

That argument mistakes the role of consent. Defendant's willingness to allow the officer to search the trailer demonstrates only that the consent was voluntary in the sense that it did not derive from official coercion or the overbearing of defendant's will. However, as the *Hall* court recognized, consent that is voluntary can nonetheless result in suppression if the consent derives from exploitation of the official illegality or police conduct that significantly affects the decision to consent:

> "This court repeatedly has recognized that, even when a defendant's consent is voluntary * * * that consent is insufficient to establish the admissibility of evidence from a warrantless search if the state cannot prove that the consent was independent of, or only tenuously related to, any preceding violation of the defendant's rights under Article I, section 9."

*Id.* at 27. It is true that, in *State v. Kennedy*, 290 Or 493, 624 P2d 93 (1981), and *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), voluntary consent sufficiently vitiated prior police illegality, but, as the court pointed out in *Hall*, in each of those cases, the defendant not only voluntarily consented, he *spontaneously* consented. *Id.* at 34.

To prove attenuation, then, the state cannot simply show voluntary consent. It must show that the consent derived neither from police conduct that significantly affected defendant nor from exploitation of unlawfully obtained knowledge. Although defendant was handcuffed in

the back of a police car, he did not accede to the officer's request for consent as the direct result of police conduct. He acceded to the officer's request for consent because he believed that he had no choice. The state met its obligation to show that the decision to consent was not significantly affected by police conduct.

Defendant argues, however, that "the information learned by the officer during the illegal stop, namely, the probation condition of no contact with known drug users, motivated the officer to request consent to search the trailer for drugs" and that "[t]he report of a 'suspicious vehicle,' which started this police contact with defendant, would not alone have motivated a request to search for drugs." We agree. The officer asked defendant for consent to search only after having received information about defendant's probation status and possible violation, and he did so immediately thereafter. That fact does not, as a matter of pure logic, *prove* that the officer requested consent because of the information, but it suffices to create an inference to that effect that the state must overcome. It did not do so. The only evidence of temporal proximity between the unlawful stop and the request for consent—one immediately preceded the other—militates against the state, and the state points to no mitigating or intervening circumstances (such as, for example, notice to defendant that he did not have to consent) that would indicate attenuation.

In sum, defendant proved that, but for the unlawful stop, the officer would not have had the opportunity to seek consent. That proof imposed on the state the burden of establishing, among other things, that the officer's request for consent did not result from knowledge discovered as a direct and immediate result of the unlawful stop. The state did not carry that burden. Defendant's motion to suppress should have been granted.

Reversed and remanded.