Argued and submitted April 30, reversed and remanded June 25, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ERIN ALBERT AYLES,
*Defendant-Appellant.*

Clatsop County Circuit Court
051228; A132029

188 P3d 378

David Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals a judgment of conviction for possession of a substantial quantity of a controlled substance. *Former* ORS 475.992(4)(b) (2003). He assigns error to the trial court's denial of his motion to suppress evidence discovered during a search of his person and a subsequent search of his backpack during a traffic stop.[1] We agree with defendant that the evidence obtained was the unattenuated product of exploitation of an unlawful stop of defendant in violation of his rights under Article I, section 9, of the Oregon Constitution. Accordingly, we conclude that the trial court erred in not suppressing the evidence, *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), and reverse and remand.

■    We take the facts from the trial court's written findings and from the record.[2] Defendant was a passenger in a car that was lawfully stopped because it did not have a front license plate and because the driver was speeding. Hunt, the state trooper who stopped the car, very quickly suspected that the driver was under the influence of methamphetamine. While Hunt was questioning the driver about whether she had any methamphetamine in the car, defendant spoke up and asked Hunt how they could "rectify" the license plate situation "so that they would stop getting stopped." Hunt thought that defendant's question was suspicious and that defendant was "over friendly" and talkative. He asked defendant for his identification. Defendant gave Hunt a Veteran's Administration card, which Hunt took and put in his patrol car. The trial court found that, at the time Hunt asked for and obtained defendant's identification, he did not have a

---

[1] The trial court issued a single ruling denying defendant's motion to suppress. Thus, defendant's characterization of his challenge as raising two separate assignments of error—one with respect to evidence found during the patdown and the other referring to evidence found in his backpack—is technically inaccurate. *See* ORAP 5.45(3) (assignments of error are to be directed against rulings by the trial court). Defendant's noncompliance with that rule has not impeded our review of the pertinent ruling.

[2] We review the lawfulness of searches and seizures for errors of law, although we are bound by the trial court's findings of historical fact to the extent that those findings are supported by evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

reasonable suspicion of criminal activity on defendant's part or of an immediate threat to his safety.

Hunt then returned to the car in which defendant was seated, asked the driver to get out and then frisked her, and had her sit on the bumper of the car.[3] Hunt then went back to his patrol car and ran a computer check on both the driver and defendant. Neither had any outstanding warrants. Hunt next asked defendant if he would "mind stepping out of the car and talking to me." Defendant agreed. Hunt had defendant walk to the rear of his patrol car and first asked him if he had any weapons. When defendant indicated that he did not, Hunt asked if he could pat him down, and defendant agreed. Hunt testified that defendant's identification was still in the patrol car at that time.[4] While conducting the patdown, Hunt discovered a clear prescription pill container with a plastic bag on the inside, which he suspected, based on his training and experience, contained illegal drugs. When asked, defendant admitted that the container contained methamphetamine. At that point, Hunt handcuffed defendant, placed him under arrest, read him his *Miranda* rights, and put him in the patrol car.

Thereafter, Hunt also arrested the driver, for suspicion of driving under the influence of intoxicants, and asked the other passengers to get out of the car so that he could search it. One of those passengers pointed out that there was a blue backpack in the car that belonged to defendant. Hunt asked defendant to step out of the patrol car and asked him if the backpack was his. Defendant admitted that it was. Hunt then asked him if there was any more methamphetamine in the backpack. Defendant said that there was and told Hunt that it contained another pill bottle with more methamphetamine in it and a glass pipe. Hunt looked in the backpack and

---

[3] The trial court found that the trooper patted down the driver *before* putting defendant's identification in the patrol car; however, Hunt's uncontroverted testimony indicated that he first placed defendant's identification and the driver's license in his patrol car. Ultimately, this discrepancy is of no consequence to our analysis.

[4] It is unclear from the record when defendant's identification was returned to him. In that regard, the record establishes only that it was in defendant's personal property when he was booked into jail.

found a prescription pill bottle with methamphetamine inside, a glass pipe, and a propane tank.

Defendant moved to suppress all of the evidence obtained after Hunt obtained defendant's identification. The trial court denied the motion, concluding that the officer's actions in taking defendant's identification and asking him to get out of the car did not constitute an unlawful stop of defendant. In its discussion of the subsequent search of defendant's person, the court noted, however, that

> "[i]f the officer's obtaining identification or asking defendant to exit the vehicle was considered a violation, exploitation becomes an issue. In this case, *Hall* would require suppression. Defendant's identification was held during the stop where a reasonable person would not feel free to leave. The consent for search was in close proximity to obtaining defendant's identification and asking him to exit. The state did not produce any evidence regarding inevitable discovery, independent discovery or a tenuous factual link that would still allow the search."

The court also stated that the subsequent search of defendant's backpack was authorized either as a search incident to defendant's arrest or under the automobile exception to the warrant requirement.

Following a stipulated facts trial, defendant was convicted of possession of 10 grams or more of a Schedule II controlled substance. *Former* ORS 475.992(4)(b). This appeal followed.

On appeal, defendant reasserts his argument that he was unlawfully seized in violation of Article I, section 9, of the Oregon Constitution when Hunt took his identification and put it in the patrol car without reasonable suspicion of criminal activity or that defendant posed an immediate threat to his safety.[5] He contends that the evidence discovered during the patdown and, subsequently, in defendant's

---

[5] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Defendant makes a similar challenge under the Fourth Amendment to the United States Constitution. Because we resolve the issue on state law grounds, we need not reach defendant's federal constitutional argument. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court considers all questions of state law before reaching federal constitutional claims).

backpack, was obtained in exploitation of that illegality and, therefore, under *Hall*, it must be suppressed.

■ The state concedes that, under the circumstances, the taking and retaining of defendant's identification amounted to an unlawful seizure of defendant under Article I, section 9. We accept that concession as well-founded and conclude that the trial court erred by ruling to the contrary. *See State v. Thompkin*, 341 Or 368, 378-79, 143 P3d 530 (2006) (unlawful seizure under Article I, section 9, occurred when one officer requested and retained the defendant's identification to conduct a records check while another officer questioned defendant concerning drugs and weapons); *State v. Rider*, 216 Or App 308, 313, 172 P3d 274 (2007) ("Both this court and the Supreme Court have repeatedly held that, when an officer retains a person's identification for investigatory purposes during questioning, the person is restrained from leaving."); *State v. Holcomb*, 202 Or App 73, 121 P3d 13, *adh'd to as modified on recons*, 203 Or App 35, 38, 125 P3d 22 (2005) (obtaining the defendant's identification and retaining it while conducting a warrant check effected a stop).

The state does, however, dispute defendant's contention that suppression of the evidence is warranted because it was obtained in exploitation of the unlawful stop. In particular, the state argues that (1) defendant has not shown the requisite causal connection between the evidence discovered during the patdown search and, later, in his backpack, and the prior unlawful police conduct and (2) even if defendant did establish such a connection, the giving of *Miranda* warnings sufficiently attenuated the taint of the unlawful police conduct. We disagree with the state in both respects.

■ Evidence obtained from a consensual search is subject to suppression under Article I, section 9, if the defendant's consent is the product of unlawful police conduct. As the Supreme Court explained in *Hall*:

> "After a defendant shows a minimal factual nexus between unlawful police conduct and the defendant's consent, then the state has the burden to prove that the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct. Deciding whether the state has satisfied that burden requires a fact-specific inquiry into

the totality of the circumstances to determine the nature of the causal connection between the unlawful police conduct and the defendant's consent. A causal connection requiring suppression may exist because the police sought the defendant's consent solely as the result of knowledge of inculpatory evidence obtained from unlawful police conduct. A causal connection requiring suppression also may exist because the unlawful police conduct, even if not overcoming the defendant's free will, significantly affected the defendant's decision to consent. Although determining the existence of such a causal connection requires examination of the specific facts at issue in a particular case, we view several considerations to be relevant to that determination, including (1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstances—such as, for example, a police officer informing the defendant of the right to refuse consent—that mitigated the effect of the unlawful police conduct."

339 Or at 34-35. That methodology also applies to evidence obtained in response to an officer's questioning during an unlawful stop. *Thompkin*, 341 Or at 381.

According to the state, defendant did not establish the requisite "but for" relationship under *Hall*. That is so, the state reasons, because

"[t]here is no reason to suppose that the fact that the trooper took and retained defendant's ID had any effect on the trooper's request that defendant consent to a patdown or on his question to defendant about what was in the backpack, or that taking and retaining defendant's ID had any effect on [defendant's] decision to consent to the patdown or to admit that he had additional methamphetamine in his backpack."

We disagree with the state's reasoning. "But for" the illegal stop, Hunt would not have been in a position to ask for defendant's consent to search him, nor would he have asked him what was in the backpack, and he would not therefore have discovered the methamphetamine. That connection is sufficient to satisfy the minimal factual nexus required under *Hall. See State v. Rodgers*, 219 Or App 366, 374, 182 P3d 209

(2008) (concluding that requisite causal nexus was established where, "but for the unlawful seizure, [the police officer] would not have been in a position to request consent"); *see also State v. Kirkeby*, 220 Or App 177, 187, 185 P3d 510 (2008); *State v. La France*, 219 Or App 548, 557, 184 P3d 1169 (2008). *Accord State v. Highley*, 219 Or App 100, 110-11, 180 P3d 1230 (2008) (where the defendant was a passenger in a car that was lawfully stopped and the officer had returned the defendant's identification before asking for consent, minimal factual nexus requirement satisfied by the close temporal proximity between the subsequent illegal stop of the defendant and the request for consent to search).

■ The burden thus shifts to the state to prove that defendant's consent was "independent of, or only tenuously related to" the illegal stop. *Hall*, 339 Or at 35; *State v. Tyler*, 218 Or App 105, 110, 178 P3d 282 (2008) (once a minimal factual nexus is demonstrated, the state must establish *either* that the consent would have occurred "independent of" the illegality *or* that the connection between the unlawful stop and the consent is attenuated; if state cannot establish independence, it must prove attenuation). We first consider whether the state has satisfied that burden with respect to defendant's consent to the officer's request for permission to search him. As in *Hall*, the request for consent to search defendant here occurred in close temporal proximity to the unlawful detention; the state does not argue otherwise. Moreover, the state has not demonstrated the existence of any intervening circumstances or other factors that might mitigate the effect of the illegal detention of defendant. Accordingly, we readily conclude that the evidence of methamphetamine obtained during the patdown is the unattenuated product of exploitation of the unlawful stop and must therefore be suppressed.

■ We turn to the evidence that the state obtained as a result of the officer's questioning of defendant about the backpack, which occurred after defendant had been handcuffed and arrested and advised of his *Miranda* rights. The state argues that the provision of *Miranda* warnings constitutes an intervening circumstance sufficient to purge the taint of the previous illegal police conduct. In the state's view,

*Hall* strongly suggests that being given *Miranda* warnings operates as a "universal solvent"[6] to break the causal chain.

We disagree for the following interrelated reasons. First, although the provision of *Miranda* warnings is a consideration in the attenuation analysis, *Hall*, 339 Or at 35, as the court in *Hall* made clear, whether the state has carried its burden of establishing that the evidence is not derived from the preceding illegality requires a fact-specific inquiry into the totality of the circumstances. *Id.* Further, after this case was briefed and argued, we decided *La France*, in which we held that the giving of *Miranda* warnings was not a sufficient intervening circumstance in that case to purge the taint of unlawful police conduct. 219 Or App at 557. In *La France*, which involved a defendant's consent to a search after he was illegally seized, we noted that a reasonable person would not understand the *Miranda* warnings to mean that a person was not required to consent to a request to be searched, but, rather, the warnings "could perpetuate the person's perception that his or her liberty continued to be restrained as the officer pursued a criminal investigation by seeking consent to a search." *Id.* Thus, the key was that defendant reasonably believed that his liberty was restricted when the officer requested consent to search, and that circumstance affected his decision to consent to the search. *See State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991).

In the state's view, it is significant that, in this case, defendant did not consent to a search, but instead made incriminating statements—after having been specifically told, as part of the *Miranda* warnings, that "he did not have to make any statements." We agree with the state that this case thus presents a closer question than in *La France*. Nevertheless, under a close reading of *Hall*, including its reliance on *State v. Olson*, 287 Or 157, 598 P2d 670 (1979), and considering the totality of the circumstances, we conclude that suppression is required.

In *Hall*, the Supreme Court held that Article I, section 9, requires consideration of the effect of unlawful police

---

[6] That particular characterization is ours, as posited at oral argument, which the state did not dispute.

conduct upon a defendant's decision to consent, even if the unlawful conduct did not rise to the level of overcoming a defendant's free will. 339 Or at 32. In arriving at that conclusion, the Supreme Court discussed several earlier cases as illustrative of the principle, among them *Olson*, which, although based on Fourth Amendment precedents, was, in the court's view, "on point." *Id*. In *Olson*, the officers made an illegal entry into the defendant's residence and, after giving him *Miranda* warnings, arrested him; thereafter, the defendant made incriminating statements to the officers. The court concluded that the giving of the *Miranda* warnings was "inadequate to relieve the obvious taint resulting from breaking in, arresting defendant, and searching the premises"— and, thus, the evidence was subject to suppression under Article I, section 9. *Olson*, 287 Or at 166; *accord State v. Vondehn*, 219 Or App 492, 509-10, 184 P3d 567 (2008) (giving of *Miranda* warnings insufficient to break causal relationship between earlier *Miranda* violation under Article I, section 12, of the Oregon Constitution and the defendant's post-*Miranda* statements).

Relying in part on *Olson*, the Supreme Court in *Hall* then distinguished its earlier decisions in *State v. Kennedy*, 290 Or 493, 624 P2d 99 (1981), and *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993)—cases in which it had concluded that suppression was *not* required following illegal police conduct—by stating:

> "As the above-described cases [including *Olson*] illustrate, this court's conclusions in *Kennedy* and *Rodriguez* that suppression was not required to vindicate those defendants' rights must be understood in light of the specific facts of each of those cases—particularly, the facts that those defendants both had volunteered to allow a search without any police prompting and, in *Rodriguez*, that the police had provided the defendant with *Miranda* warnings before questioning him about drugs or weapons. In the absence of such intervening circumstances—or other circumstances mitigating the effect of the unlawful police conduct—this court has required suppression under facts similar to those at issue in *Kennedy* and *Rodriguez*."

*Hall*, 339 Or at 34. From this discussion in *Hall*, we conclude the following: As in *Olson*, the mere proximate provision of

*Miranda* warnings following an unlawful seizure or entry does not *per se* attenuate the taint of the prior illegal police conduct. Rather, the asserted "attenuating" effect of *Miranda* warnings must be assessed in the totality of the circumstances, including whether the defendant subsequently, and without police prompting, unilaterally volunteered information or consented to search.

The facts at issue here are similar to *Olsen*. At the time that defendant made the incriminating statements that led to the discovery of the evidence in the backpack, he was handcuffed and under arrest as a direct result of previous illegal police conduct. The inculpatory evidence used to arrest him—that is, the drugs found on his person—was itself the fruit of the previous exploitation of the original illegality. The officer then sought defendant's response to questioning as the result of knowledge of the inculpatory drug evidence obtained from the preceding unlawful police conduct. Moreover, defendant did not spontaneously offer the incriminating statements about drugs in his backpack; rather, those statements were prompted by the officer's questions. Each phase of the encounter flowed in sequence.

Under those circumstances, the fact that defendant had been given *Miranda* warnings is insufficient to demonstrate a break in the causal relationship between defendant's statements and the earlier violations. That is, the giving of *Miranda* warnings failed to mitigate the significant effects of the unlawful police conduct on defendant's decision to respond to the officer's questions. Thus, the state has failed to meet its burden of establishing that defendant's decision to respond to the officer's questions, "even if voluntary, was not the product of the preceding violation of defendant's rights under Article I, section 9." *Hall*, 339 Or at 36. The trial court erred in denying the motion to suppress the evidence obtained during the illegal stop of defendant.

Reversed and remanded.