Argued and submitted March 31, reversed and remanded November 19, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DENNIS GRANT STRADER,
*Defendant-Appellant.*

Coos County Circuit Court
04CR0819; A127403

197 P3d 40

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals a judgment of conviction for possession of methamphetamine, a Schedule II controlled substance. *Former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). He assigns error to the trial court's denial of his motion to suppress evidence obtained during a consensual search by sheriff's deputies.[1] We review for errors of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and reverse and remand.

We state the facts consistently with the trial court's factual findings and its decision denying defendant's motion to suppress. *State v. Shaff*, 343 Or 639, 641, 175 P3d 454 (2007). Around midnight on February 17, 2004, Coos County sheriff's deputies Mitchell and Kenning were on patrol and noticed defendant, who is an adult male, and two teenaged girls talking on the sidewalk in a poorly lit area of a residential neighborhood. The deputies decided to "stop[ ] to talk to them because * * * for one, the females were almost out after curfew. And just the manner—they were bunched up, talking. It looked very suspicious from what was going on." Mitchell explained that he was concerned because he "couldn't tell * * * if [defendant] was harassing the girls, not letting them leave," if "there was narcotics activity going on," or if the females "were feeling sorry for [defendant]" because he looked homeless and the girls were "nicely dressed." The deputies pulled over and got out of the patrol car without using overhead lights or sirens.[2]

Kenning asked defendant if he "could talk to him for a second." Defendant and Kenning stood at the rear of the

---

[1] Defendant also assigns error to the trial court's admission of the state police crime lab report into evidence over defendant's objection that it violated his constitutional right to confrontation. Because of our disposition on defendant's first assignment of error, we need not reach the merits of defendant's second assignment of error. *But see State v. Birchfield*, 342 Or 624, 157 P3d 216 (2007) (admission of a laboratory report without requiring the state to produce at trial the criminalist who prepared the report, or to demonstrate unavailability, violates a defendant's right to confront adverse witnesses under Article I, section 11, of the Oregon Constitution).

[2] Mitchell testified that he and Kenning used their flashlights and that he may have turned on the car's back flashers as a safety measure to alert other drivers to the car's presence.

patrol car and began a "casual conversation" during which Kenning asked defendant where he was heading and where he lived. Meanwhile, Mitchell had taken the girls aside toward the front of the patrol car. Defendant was calm throughout the conversation with Kenning.

Kenning asked defendant for identification, and defendant provided Kenning with an identification card. Kenning left defendant, taking his identification card, and walked toward Mitchell at the front of the patrol car. Mitchell met Kenning midway, and Kenning then handed defendant's identification card to Mitchell. Kenning returned to defendant, and Mitchell ran a records check on defendant's identification through dispatch. While Mitchell retained defendant's identification and was waiting for the records check to come back from dispatch, Kenning resumed his conversation with defendant. Kenning explained at the hearing that he was basically "just killing time until [defendant] wanted to leave, or [until] Deputy Mitchell returned with [defendant's] ID."

During that time, Kenning asked defendant if he had anything illegal on him. Defendant denied possessing any illegal substances. Next, Kenning asked defendant for consent to search his person, and defendant did not respond orally but began emptying the contents of his pockets onto the back of the patrol car. One of the objects defendant took out of his pocket was a "plastic bindle" that contained a white substance. When Kenning asked defendant if the bindle contained drugs, defendant put his head down but did not reply. Defendant was arrested for possession of a controlled substance. The deputies submitted the bindle to the Oregon State Police crime lab for testing, and the lab report identified the substance in the bindle as methamphetamine.

Before trial, defendant moved to suppress the evidence obtained as a result of the warrantless search on the ground that the evidence was obtained during an unlawful stop that was not supported by reasonable suspicion. The trial court concluded that defendant had not been "stopped" for constitutional purposes at the time that he consented to the search of his person, and therefore the court denied the

motion. Following a trial to the court, defendant was found guilty of possession of a controlled substance.

On appeal, defendant argues that the trial court erred in denying his motion to suppress. He contends that he was unlawfully stopped when the deputies retained his identification and used that information to perform a records check without reasonable suspicion of criminal activity. Further, defendant argues that the evidence he sought to suppress was gained as a result of the unlawful stop and, therefore, should have been suppressed under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.

In its response, the state concedes that the deputies lacked reasonable suspicion when they approached defendant. However, the state relies on *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), and argues that, pursuant to its interpretation of *Hall*, defendant had not been "stopped" for constitutional purposes, because the record does not establish that defendant was aware that the deputies were using his identification to perform a records check. According to the state, "*Hall* holds that a person who knows that he is the subject of an ongoing police investigation is seized because he is objectively unlikely to feel free to leave in the absence of some action by the police to inform him that he is free to go." Accordingly, the state urges this court to remand the matter to the trial court to resolve the factual issue of whether defendant was aware of the records check at the time of the encounter.

In *State v. Highley*, 219 Or App 100, 180 P3d 1230 (2008),[3] decided just before oral argument in this case, we applied the reasoning of *Hall* in the context of a traffic stop. We held that a stop had occurred when the officer asked the defendant, a passenger in a car, whether he was on probation and thereafter requested and obtained the defendant's driver's license, wrote down the information, and returned the license to the defendant. *Id.* at 102-03, 110.

---

[3] By order dated July 23, 2008, the Supreme Court indicated that it is holding a petition for review in *Highley* in abeyance pending its decision in *State v. Rider*, 216 Or App 308, 172 P3d 274 (2007), *rev allowed*, 345 Or 94 (2008).

■ Here, we conclude, consistently with *Highley*, that the deputies stopped defendant. First, the state concedes that Kenning and Mitchell lacked reasonable suspicion of defendant's criminal activity. Second, on approaching defendant and the teenaged girls, Kenning asked defendant for his identification; defendant handed Kenning his identification; and Kenning left defendant's side to walk toward Mitchell—who was with the teenaged girls at the front of the patrol car—and handed defendant's identification to Mitchell. Third, Mitchell retained defendant's identification while Kenning returned to defendant and resumed talking with him. Fourth, on returning to defendant, Kenning asked defendant whether he had anything illegal on his person; defendant denied possessing anything illegal; and Kenning then asked for defendant's permission to search. On those facts, defendant was stopped for constitutional purposes, and a remand to the trial court for further factfinding is unnecessary.

■ Our analysis does not end there, however. Pursuant to *Hall*, evidence obtained from a consensual search of a defendant is subject to suppression under Article I, section 9, if the defendant's consent is the product of the prior unlawful police conduct. The Supreme Court explained in *Hall* that,

> "[a]fter a defendant shows a minimal factual nexus between unlawful police conduct and the defendant's consent, then the state has the burden to prove that the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct. Deciding whether the state has satisfied that burden requires a fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection between the unlawful police conduct and the defendant's consent. * * * Although determining the existence of such a causal connection requires examination of the specific facts at issue in a particular case, we view several considerations to be relevant to that determination, including (1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstances—such as, for

example, a police officer informing the defendant of the right to refuse consent—that mitigated the effect of the unlawful police conduct."

339 Or at 34-35 (footnote omitted).

■      Here, defendant satisfied the minimal factual nexus required under *Hall* by establishing that, "but for" the unlawful stop, Kenning would not have been in a position to ask for defendant's consent to search his person. *See State v. Ayles*, 220 Or App 606, 612-13, 188 P3d 378 (2008) (concluding that the defendant satisfied his burden under *Hall* by establishing a "but for" relationship between the illegal police conduct and the defendant's consent to search). Accordingly, the burden shifted to the state to establish that defendant's consent was "independent of, or only tenuously related to" the unlawful stop. *Hall*, 339 Or at 35. As in *Highley*, the request for consent to search defendant occurred in close temporal proximity to the prior illegality. Moreover, the state has not established that any intervening circumstances or other factors might have mitigated the effect of the unlawful stop on defendant's subsequent consent to search his person. Because the methamphetamine seized from defendant is the unattenuated product of exploitation of the unlawful stop, the motion to suppress should have been granted.

Reversed and remanded.