Argued and submitted January 29, reversed and remanded November 25, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JENNIFER LYNN ROBBINS,
*Defendant-Appellant.*

Multnomah County Circuit Court
050545301; A130659

221 P3d 801

Kristin Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Timothy A. Sylwester, Attorney-in-Charge, Capital Cases, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Susan G. Howe, Senior Assistant Attorney General.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Deits, Senior Judge.

HASELTON, P. J.

### HASELTON, P. J.

Defendant appeals a judgment of conviction for possession of a controlled substance. *Former* ORS 475.992(4)(b) (2003), *renumbered as* ORS 475.840(3)(b) (2005). She assigns error to the trial court's denial of her motion to suppress evidence discovered after she consented to a search of her purse. Defendant argues that the evidence obtained was the unattenuated product of her unlawful seizure, in violation of her rights under Article I, section 9, of the Oregon Constitution[1] and the Fourth and Fourteenth Amendments to the United States Constitution.[2] We review the trial court's legal conclusions for errors of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and agree with defendant. Accordingly, we conclude that the trial court erred in not suppressing the evidence and reverse and remand.

We take the facts as found by the trial court, to the extent those findings are supported by constitutionally sufficient evidence, and facts from the record that are consistent with the court's ultimate conclusion. *Id.* Portland Police Bureau Officers Gjovik and Kohnke observed the driver of a car commit a misdemeanor (tossing a cigarette out the window) and attempted to pull the car over. The driver did not stop. Instead, the driver turned down a residential street and started to accelerate, apparently attempting to elude the police. When it appeared to the officers that the driver was

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The provisions of the Fourth Amendment apply to the states under the Due Process Clause of the Fourteenth Amendment, which provides, in part, that "[n]o state shall * * * deprive any person of life, liberty, or property without due process of law * * *."

going to try to "jump out and run," they used a "pursuit intervention technique" to force the vehicle to stop.

After the officers stopped the car, they immediately took the driver and defendant, who was a passenger in the car, into custody.[3] The trial court determined that, at the time that defendant was detained, the officers lacked reasonable suspicion or probable cause to believe that she had committed any crime. The trial court nevertheless concluded that her initial seizure was "reasonable" based on officer safety concerns.

Next, Kohnke advised defendant of her *Miranda* rights.[4] Defendant indicated that she understood her rights. Kohnke then asked to see defendant's identification. Defendant responded that her identification was in the "notebook/Day Timer" in her purse in the car. Kohnke asked defendant whether he could retrieve her purse from the car to "get the ID and look through her purse and Day-Timer" and whether "there was anything inside the purse * * * [that] shouldn't be." Defendant gave Kohnke consent to search. When Kohnke was looking for defendant's identification, he discovered a small baggie that he suspected contained methamphetamine. Kohnke asked defendant what the baggie contained, and she admitted that "it was meth."

Defendant was charged with possession of a Schedule II controlled substance. Before trial, defendant moved to suppress all of the evidence obtained after she was taken into custody, including the methamphetamine and her statements to Kohnke. The trial court concluded that, although defendant's initial seizure was "reasonable" to protect officer safety, "once she was out of the car, separated from her purse and in police control, that concern [for officer safety] was gone." The trial court determined that, at that point, defendant was unlawfully seized because her

---

[3] It is not clear from the record whether defendant was handcuffed.

[4] The specific *Miranda* warnings defendant purportedly received—the right to remain silent and the warning that inculpatory statements could be used against her in court, the right to have advice of counsel, and the right to have counsel appointed at public expense—were not recited into the record, but the trial court concluded, and we accept on appeal, that defendant was accurately advised of them all.

continued detention was not supported by reasonable suspicion or probable cause. Nonetheless, the court denied defendant's motion, reasoning that her consent to search was independent of her unlawful seizure, in part because it was preceded by *Miranda* warnings.

Following a trial to the court on stipulated facts, defendant was convicted of the charged offense. *Former* ORS 475.992(4)(b). This appeal followed.

On appeal, defendant renews the arguments she made below, contending that she was unlawfully seized when she was detained, because her detention was not supported by reasonable suspicion or probable cause, and was not justified on the basis of officer safety concerns. Further, relying on *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), defendant argues that the search of her purse was unlawful because her consent to search was tainted by her unlawful seizure and that this taint was not cured by the provision of *Miranda* warnings.

■ The state concedes that Kohnke unlawfully seized defendant when he took her into custody because the state failed to meet its burden of proof that defendant's seizure was justified based on officer safety concerns or otherwise. We agree and accept the state's concession. *See State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) (reasonable steps may be taken to protect officer safety where the officer has reasonable suspicion, based on specific and articulable facts, that a person might pose an immediate threat of serious physical injury to the officer); *State v. Dahl*, 323 Or 199, 208, 915 P2d 979 (1996) (the state has the burden to prove by preponderance of the evidence that a warrantless seizure of defendant's person is reasonable under an exception to the warrant requirement).

The state, however, does dispute defendant's contention that her consent was the unattenuated product of her unlawful seizure. Specifically, as we understand the state's argument, it posits, first, that there was no causal connection between defendant's unlawful seizure and her decision to consent. Second, the state argues that, even if there was a causal connection, the provision of *Miranda* warnings were an "intervening circumstance" that sufficiently mitigated the

effect of the unlawful seizure on defendant's decision to consent. For the reasons set forth below, we disagree with the state on both points.

Article I, section 9, requires the suppression of evidence obtained from a consensual search if the defendant's decision to consent was "significantly affected" by unlawful police conduct, even if that conduct did not rise to the level of overcoming the defendant's free will. *Hall*, 339 Or at 35. That is because the purpose of suppressing unlawfully obtained evidence under Oregon law is remedial—"the aim * * * is to restore a defendant to the same position as if 'the government's officers had stayed within the law.' " *Id*. at 24 (quoting *State v. Davis*, 313 Or 246, 253, 834 P2d 1008 (1992)). Thus, the critical inquiry is whether the evidence defendant seeks to suppress was obtained as a result of a violation of her rights under Article I, section 9. *Hall*, 339 Or at 24.

As the Oregon Supreme Court explained in *Hall*, a defendant must first establish a "minimal factual nexus" between the unlawful police conduct and the defendant's decision to consent. *Id*. at 25. A nexus exists if there is a "but for" relationship between the evidence sought to be suppressed and the prior unlawful conduct. *Id*.

After a defendant establishes a minimal factual nexus, the burden shifts to the state to show that the evidence should not be suppressed notwithstanding the preceding illegality. *Id*. That requires "a fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection between the unlawful police conduct and the defendant's consent." *Id*. at 35. The state must establish either that the evidence would have been obtained "independent of" the illegality or that the connection between the unlawful stop and the consent is attenuated. *Id*.; *State v. Tyler*, 218 Or App 105, 110, 178 P3d 282 (2008). If the state cannot establish that the evidence would have been obtained "independent of" the illegality, it must prove that the causal connection is attenuated, *i.e.*, "is *not* a causal connection requiring suppression." *Id*. at 110 (internal quotation marks and brackets omitted; emphasis in original). The court in *Hall* specified several considerations that are relevant to prove attenuation, including

"(1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstances—such as, for example, a police officer informing the defendant of the right to refuse consent—that mitigated the effect of the unlawful police conduct."

339 Or at 35.

■      Here, defendant established the minimal factual nexus required by *Hall*. It is apparent that, "but for" the fact that defendant was unlawfully taken into custody, Kohnke would not have been in the position to request her consent to search her purse and retrieve her identification. *See State v. Strader*, 224 Or App 38, 44, 197 P3d 40 (2008) (concluding that the defendant established the minimal factual nexus under *Hall* where, "but for" the unlawful stop, the officer would not have been in a position to ask for the defendant's consent); *see also State v. Ayles*, 220 Or App 606, 612-13, 188 P3d 378, *rev allowed*, 345 Or 460 (2008) (same); *State v. Kirkeby*, 220 Or App 177, 187, 185 P3d 510, *rev allowed*, 345 Or 301 (2008) (same).

■      The burden thus shifts to the state to show that, given the "totality of the circumstances," defendant's consent was "independent of, or only tenuously related to" her unlawful detention. *Hall*, 339 Or at 35. The state does not dispute that defendant's consent to search occurred in close temporal proximity to Kohnke unlawfully placing her in custody. Rather, the state argues that the provision of *Miranda* warnings was an "intervening circumstance" that alone severed or attenuated the taint of the unlawful custody on defendant's decision to consent. In other words, the state argues that, even though Kohnke unlawfully detained defendant and requested her consent to search only moments later, the fact that defendant was immediately *Mirandized*—and that fact alone—wiped clean the taint of the unlawful detention.

■      We disagree with the state. Our case law establishes that *Miranda* warnings do not operate as a "universal solvent" that breaks the causal chain between illegal police conduct and a defendant's decision to consent. *Ayles*, 220 Or App at 614. Rather, as we reasoned in *Ayles*, "the asserted 'attenuating' effect of *Miranda* warnings must be assessed in the

totality of the circumstances, including whether the defendant subsequently, and without police prompting, unilaterally volunteered information or consented to search." *Id.* at 616. Indeed, in *State v. La France*, 219 Or App 548, 557, 184 P3d 1169 (2008), we suggested that *Miranda* warnings could factor *against* a finding of attenuation in some circumstances. That is because the warnings, which do not inform suspects of their right to refuse a request to be searched, "could perpetuate the person's perception that his or her liberty continued to be restrained as the officer pursued a criminal investigation by seeking consent to a search." *Id.*; *cf. Hall*, 339 Or at 35 n 21 (distinguishing the mitigating effect of *Miranda* warnings from the effect of a warning that the defendant has a right to refuse consent in a case where consent to search is requested).

Accordingly, in *Ayles*, this court determined that *Miranda* warnings provided after the defendant was unlawfully seized were not a sufficient intervening circumstance to mitigate the effects of the unlawful seizure on the defendant's subsequent inculpatory statements. 220 Or App at 614, 616. Similarly, in *La France*, we held that *Miranda* warnings given after the defendant was unlawfully seized did not purge the taint of that unlawful seizure on the defendant's decision to consent to a search. 219 Or App at 557.

The state argues that *Ayles* and *La France* are distinguishable because, in those cases, the officers obtained inculpatory information by virtue of the defendants' unlawful seizures *before* providing *Miranda* warnings. However, in *State v. Corbett*, 223 Or App 757, 196 P3d 573 (2008), which was decided the day briefing was completed in this appeal, we held that *Miranda* warnings did not mitigate the effect of the defendant's consent after an unlawful seizure in circumstances closely analogous to those presented here. *Id.* at 759. In *Corbett*, the defendant was a passenger in a car that was lawfully stopped for a traffic infraction. *Id.* at 758. The officer then checked the driver's and the defendant's identification and received consent from the driver to search the car. *Id.* The officer testified that, when the search of the car commenced, neither the driver nor the defendant was free to leave. *Id.* We determined that, at that point, the defendant was unlawfully seized because the officer was not engaged in

an investigation related to the traffic offense and did not have reasonable suspicion that the defendant was engaged in a crime. *Id*. During the search of the car, the officer found the defendant's purse and, after the defendant had been advised of her *Miranda* rights, asked for and received the defendant's consent to look inside of it. *Id*.

On appeal, we determined that the circumstances presented in *Corbett* did not differ markedly from those presented in *Ayles* and *La France*, and, consequently, held that the *Miranda* warnings did not sufficiently mitigate the taint of the defendant's unlawful seizure on her decision to consent. *Id*. at 759.

Here, the circumstances necessitating suppression are closely analogous to those presented in *Corbett*. Only moments after defendant was unlawfully placed in custody and advised of her *Miranda* rights, Kohnke asked for consent to search her purse. Given the close temporal proximity between defendant's unlawful seizure and Kohnke's request for consent and the fact that defendant was not advised in addition of her right to refuse consent, the *Miranda* warnings were insufficient to remove the taint of prior illegal conduct.

Because the state did not demonstrate that defendant's consent was attenuated from her preceding unlawful detention, the trial court erred when it denied defendant's motion to suppress.

Reversed and remanded.