Submitted August 27, 2009, reversed and remanded March 17, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JETHRO K. TOWAI,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0700259; A136857

228 P3d 601

Peter Gartlan, Chief Defender, Appellate Division, and Ingrid A. MacFarlane, Office of Public Defense Services, filed the briefs for appellant.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Janet A. Metcalf, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant, who was convicted of possession of methamphetamine, argues on appeal that the trial court erred in denying in part his motion to suppress evidence. As explained below, we agree with defendant that he was entitled to suppression. Accordingly, we reverse and remand.

We are bound by the trial court's historical findings of fact relating to defendant's motions to suppress, if supported by evidence in the record. *State v. Ehly,* 317 Or 66, 75, 854 P2d 421 (1993). We review the trial court's legal conclusions for errors of law. *Id.* In light of the fact that the trial court granted in part and denied in part defendant's motion to suppress, we state the facts—which are not disputed—consistently with the trial court's legal conclusions.

Defendant was a passenger in the back seat of a car driven by his girlfriend, Minolo. He and Minolo had a verbal altercation, and she pulled the car to the side of the road. The time was late evening, and all of the businesses were closed in the commercial area where she stopped the car. Deputy Copenhaver observed the car stopped at the side of the road and pulled behind it to investigate the situation. He did not observe any traffic infraction and did not suspect criminal activity. He activated his amber lights so that the cars would be visible to traffic and approached Minolo. He observed that Minolo had been crying, and she indicated that she had had an argument with defendant, who also looked upset. Copenhaver called for a backup car to join him. Copenhaver then walked to the other side of the car and asked defendant to step out. Defendant did so. Copenhaver asked defendant if he had any identification. Defendant replied that it was in his backpack in the trunk of the car. Copenhaver asked defendant if Copenhaver could get the identification, and defendant agreed. Copenhaver opened the trunk and searched the backpack. He did not find defendant's identification, but he found two empty cylindrical pieces of glass. Copenhaver asked defendant if they were pipes, and defendant indicated that they were not; he stated that he worked at a glass company and had acquired the glass pieces there.

At that point, a backup officer, Lycomb, arrived and parked behind Copenhaver. Copenhaver asked defendant for

his name and date of birth, and, when defendant gave him that information, Copenhaver wrote it down and asked Lycomb to check defendant for "wants and warrants." While Lycomb was doing that, Copenhaver talked to defendant about the altercation with Minolo. Lycomb returned with information that Minolo had a restraining order against defendant. Copenhaver then arrested defendant for violation of the restraining order.

Defendant was handcuffed, *Mirandized*, and placed in one of the police cars. Copenhaver then returned to Minolo's car to speak with her, telling her that he had arrested defendant for violating the restraining order. At that point, Copenhaver asked Minolo if he could search the car. He did not suspect her of any crime, but asked because he "had just kind of a weird feeling when I found those glass pieces" in the backpack. Minolo consented to a search of the car, and Copenhaver found, in the center console in the back seat near where defendant had been seated, a baggie of methamphetamine, as well as some glass pieces similar to those he had found in the backpack. Minolo denied that the drugs belonged to her. At that point, Copenhaver arrested Minolo and placed her in handcuffs. Copenhaver decided, however, that the drugs more likely belonged to defendant, so he freed Minolo and then returned to the police car where defendant was confined and asked him about the methamphetamine. Defendant denied that it was his. Copenhaver told defendant that Minolo could get in trouble and asked defendant why he was getting Minolo into trouble if the methamphetamine was not hers. Defendant eventually admitted that the methamphetamine belonged to him, not to Minolo.

Copenhaver testified at the suppression hearing that, when he first approached the car, he was not investigating a traffic infraction and did not have reasonable suspicion of a crime. He also indicated that he did not have reasonable suspicion of a crime when he asked defendant to get out of the car, asked for identification, searched the backpack, and found the glass cylinders.

The trial court concluded that, at the point when Copenhaver was searching defendant's backpack for identification, defendant had been stopped and that Copenhaver

did not have reasonable suspicion for a stop at that point. The court then considered whether, under *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), Minolo's consent to the search of the car was valid despite the prior illegality, and, thus, the methamphetamine (as well as defendant's subsequent statements about it) were admissible. The court concluded that Minolo's consent vitiated the prior illegality and that, although the results of the search of the backpack were subject to suppression, the drugs found in the car, as well as defendant's later statements, were admissible.

■     On appeal, defendant asserts that the trial court correctly concluded that defendant was unlawfully stopped when Copenhaver searched his backpack but that the trial court erred in failing to suppress the evidence obtained after Minolo consented to the search of the car on the ground that it was derived from the prior illegality.

The state cross-assigns error to the trial court's conclusion that defendant was stopped when Copenhaver searched his backpack, arguing that *State v. Rider*, 216 Or App 308, 172 P3d 274 (2007), *rev dismissed*, 345 Or 595 (2008), and *State v. Highley*, 219 Or App 100, 180 P3d 1230 (2008), were wrongly decided. The state asserts that defendant was not stopped until Copenhaver arrested him for violating the restraining order and that all of the evidence therefore was lawfully obtained.

We reject without discussion the state's general position that *Rider* and *Highley* were wrongly decided and turn to the state's particular argument in this case. The state takes the position that, after Copenhaver received identifying information from defendant, "[n]othing in the record suggests that defendant knew that another deputy was running that information through dispatch." We disagree. Copenhaver testified that when he was questioning defendant after defendant was outside the car, Lycomb was "right there," and after Copenhaver received identifying information from defendant, he "asked Deputy Lycomb to check that name through our dispatch center to check for wants and warrants." Copenhaver was then asked if he "continued" to speak with defendant, to which he responded, "Yes." From that testimony—and in light of the trial court's conclusion

that defendant had been stopped—we conclude that Copenhaver was in defendant's presence when he asked Lycomb to check defendant for wants and warrants. *Accord State v. Khoshnaw*, 234 Or App 24, 227 P3d 1188 (2010) (evidence that an officer radioed for "wants" in the presence of the defendant, in the absence of any contradictory evidence, did not support conclusion that the defendant did not know that the officer was investigating him). Thus, consistently with *Rider* and *Highley*, we conclude that the trial court correctly determined that defendant was unlawfully stopped when the challenged evidence was found.

■ The state concedes that, if defendant had been unlawfully stopped, then the driver's consent to search the car was obtained through exploitation of that illegality. That is, the state concedes that there is a minimal factual nexus between the illegality and the subsequently obtained evidence. As the state acknowledges, Copenhaver admitted that his only reason for seeking Minolo's consent for a search of the car was because he had found glass cylinders in defendant's backpack. We agree with and accept the state's concession on that point.

■ The state argues, however, that the court nonetheless properly admitted the evidence, because the state demonstrated attenuation between the prior illegality and the subsequent discovery of evidence. In *Hall*, 339 Or at 34-35, the court stated:

"After a defendant shows a minimal factual nexus between unlawful police conduct and the defendant's consent, then the state has the burden to prove that the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct. Deciding whether the state has satisfied that burden requires a fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection between the unlawful police conduct and the defendant's consent. A causal connection requiring suppression may exist because the police sought the defendant's consent solely as the result of knowledge of inculpatory evidence obtained from unlawful police conduct. A causal connection requiring suppression also may exist because the unlawful police conduct, even if not overcoming

the defendant's free will, significantly affected the defendant's decision to consent. Although determining the existence of such a causal connection requires examination of the specific facts at issue in a particular case, we view several considerations to be relevant to that determination, including (1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstances—such as, for example, a police officer informing the defendant of the right to refuse consent—that mitigated the effect of the unlawful police conduct.[21]

---

"[21] As noted previously, * * * [i]n *Brown v. Illinois*, 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975), the United States Supreme Court also identified some of these considerations as relevant to deciding the admissibility of a defendant's voluntary statements following a Fourth Amendment violation. *See id.* at 603-04 (in deciding whether Fourth Amendment exclusionary rule requires suppression of defendant's voluntary statements following unlawful arrest, court should consider whether police provided defendant with *Miranda* warnings, along with '[t]he temporal proximity of the arrest and the confession, [and] the presence of intervening circumstances'[)]. * * * The other considerations that the Supreme Court identified in *Brown*—namely, whether the police had provided the defendant with *Miranda* warnings (or, in the case of a consent search, with a warning that the defendant had the right to refuse consent), the temporal proximity between the illegality and the defendant's confession or consent, and the presence of intervening circumstances—relate to the causal connection between the preceding illegality and the defendant's confession or consent, and, for that reason, also are relevant to the decision whether exclusion is required to vindicate a defendant's rights under Article I, section 9."

The state argues in the present case, as it has in various others, that giving *Miranda* warnings to defendant provided the necessary intervening circumstance to render the evidence admissible. The state relies, in part, on the court's statement in *State v. Thompkin*, 341 Or 368, 380, 143 P3d 530 (2006):

"In *Hall*, where the defendant's consent to search followed an unlawful stop, the court recognized several considerations relevant to determining whether exclusion is required to vindicate a defendant's rights under Article I, section 9. *Hall*, 339 Or at 35, 35-36 n 21. Those considerations include: (1) the temporal proximity between the unlawful police conduct and the challenged evidence; (2) the existence of any intervening circumstances—such as the provision of *Miranda* warnings before asking about drugs and

weapons; and (3) the presence of any circumstances that mitigated the effect of the unlawful police conduct—such as informing a defendant of the right to refuse to comply with an officer's request. *Id.* at 35."

The state asserts that, in this case, because defendant made his admission about the methamphetamine belonging to him after he had received *Miranda* warnings, those statements need not be suppressed.

We have rejected in numerous cases the state's proposition that *Miranda* warnings serve as a "universal solvent" that renders unimportant the existence of a prior illegality. *State v. Ayles*, 220 Or App 606, 615, 188 P3d 378, *rev allowed*, 345 Or 460 (2008). We concluded in *Ayles*:

"[T]he mere proximate provision of *Miranda* warnings following an unlawful seizure or entry does not *per se* attenuate the taint of the prior illegal police conduct. Rather, the asserted 'attenuating' effect of *Miranda* warnings must be assessed in the totality of the circumstances, including whether the defendant subsequently, and without police prompting, unilaterally volunteered information or consented to search."

*Id.* at 615-16.

As the state acknowledges, under *Ayles*, it has not met its burden of showing attenuation. Here, as the state acknowledges, the illegality led to the discovery of drugs, and the officer questioned defendant about the illegally discovered drugs after giving defendant *Miranda* warnings. The state posits, though, that *Ayles* was wrongly decided and that the prior illegality had "dissipated" because Copenhaver had released Minolo after discovering the drugs, and defendant had been *Mirandized* before admitting that the drugs were his. We disagree. Copenhaver released Minolo because he believed that defendant, not Minolo, owned the drugs—and the reasons for that belief were all derived from the unlawful stop of defendant. That Copenhaver was not unlawfully detaining Minolo when defendant made the statements is not determinative in the "totality of the circumstances" here.

Copenhaver questioned defendant while defendant was being unlawfully detained as a result of the prior illegality, and he questioned defendant in such a manner as to pressure defendant to admit that the drugs belonged to him in order to exonerate Minolo. Under the totality of the circumstances, defendant's statements cannot be viewed as "volunteered" in a manner that is unrelated to the prior illegality. We conclude that neither the discovery of the drugs nor defendant's subsequent admission was attenuated from the prior illegality. *Accord State v. Hemenway*, 232 Or App 407, 222 P3d 1103 (2009) (statement made in response to police questioning after *Miranda* warnings was not attenuated from prior illegality); *State v. Robbins*, 232 Or App 236, 221 P3d 801 (2009) (same); *State v. Corbett*, 223 Or App 757, 196 P3d 573 (2008) (same).

We conclude that the trial court erred in denying in part defendant's motion to suppress evidence.

Reversed and remanded.