Submitted on remand from the Oregon Supreme Court December 11, 2001, reversed and remanded February 6, 2002

STATE OF OREGON,
*Respondent,*

*v.*

TRAVIS JOHN RAY,
*Appellant.*

C96-2920CR; A98561

40 P3d 528

David E. Groom, State Public Defender, and Louis R. Miles, Deputy Public Defender, for appellant.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Kaye M. McDonald, Assistant Attorney General, for respondent.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant was convicted of two counts of unlawful possession of a controlled substance. ORS 475.992. At trial, defendant sought to suppress evidence on the ground that it was gathered in the course of an unlawful search of the vehicle in which defendant was a passenger. The trial court concluded that, although the search was unlawful under ORS 810.410(3)(b) (1995),[1] the later discovery of a warrant for defendant's arrest "purged the taint" of the previous unlawful search. Defendant appealed, and we affirmed on the alternative ground that ORS 136.432 (also known as Senate Bill 936) applied retroactively and that the evidence would not be suppressed because it was the result of a statutory rather than a constitutional violation. *State v. Ray*, 164 Or App 145, 990 P2d 365 (1999). The Oregon Supreme Court subsequently vacated and remanded this case for further consideration in light of *State v. Fugate*, 332 Or 195, 26 P3d 802 (2001).[2] *State v. Ray*, 332 Or 628, 34 P3d 168 (2001). For the reasons set forth below, we reverse and remand.

■  We repeat the facts as stated in our previous opinion:

"On the afternoon of December 6, 1996, Deputy Evans saw a car with expired registration stickers. He stopped the car, in which defendant was a passenger, approached the driver, Kathy Christensen, and asked her for her driver's license, registration, and proof of insurance. Christensen handed Evans an identification card and explained that she did not have a driver's license or proof of insurance. Evans returned to his patrol car to run a records check on Christensen. At approximately the same time that Evans noticed a valid temporary permit in the rear window of the car, he learned that Christensen's driver's license had been suspended.

"Evans approached Christensen again and asked her to step out of the car, which she did. He then asked defendant, who was seated in the front passenger seat, to step out of

---

[1] All references to ORS 810.410 are to the 1995 version of that statute.

[2] In *Fugate*, the court held that retroactive application of ORS 136.432 violated the *ex post facto* clause of Article I, section 21, of the Oregon Constitution. 332 Or at 214-15.

the car as well. Defendant complied with that request. Evans asked defendant for his name and date of birth, and defendant gave several false names and dates of birth. At the hearing on defendant's motion to suppress, defendant testified that he lied about his name and date of birth because he knew a warrant had been issued for his arrest.

"While talking with defendant, Evans observed a black gym bag on the floor in front of the right front passenger seat, where defendant had been seated. At that point, Evans asked Christensen if he could search her car and its contents. She agreed. Before conducting the search, Evans asked defendant if he had any personal property in the car. Defendant said, 'No.' Evans proceeded to search the gym bag and found controlled substances. Thereafter, Christensen and defendant continued to disclaim any ownership or possessory interest in the gym bag.

"Evans arrested both defendant and Christensen for possession of a controlled substance. Defendant then disclosed his real name and date of birth, and Evans discovered an outstanding felony warrant for defendant's arrest. Thereafter, Evans conducted an inventory of the car, seized the gym bag and inventoried its contents, and transported Christensen and defendant to the Washington County Sheriff's office." *Ray*, 164 Or App at 147-48 (footnotes omitted).

Defendant argues on appeal that the trial court, while correctly determining that a statutory violation had occurred,[3] erred in holding that the evidence discovered during the search of Christensen's vehicle need not be suppressed based on the court's application of a line of cases indicating that, in some circumstances, officers' discovery of an outstanding warrant for a defendant's arrest may purge the taint of a prior illegality. *See generally State v. Dempster*, 248 Or 404, 434 P2d 746 (1967); *State v. Carmickle*, 97 Or App 269, 775 P2d 908, *rev den* 308 Or 382 (1989); *State v. Snyder*, 72 Or App 359, 695 P2d 958, *rev den* 299 Or 251 (1985). After the trial court's decision in the present case, we decided *State v. Taylor*, 151 Or App 687, 692, 950 P2d 930 (1997), *rev den*

---

[3] That determination was based on the court's holding in *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995), concerning the limited scope of traffic stops.

327 Or 432 (1998), in which we explained the *Dempster* line of cases as follows:

> "In all of the cases cited by the state [*i.e.*, the *Dempster* line of cases], the search at issue was conducted *after* the discovery of an outstanding warrant and the arrest of the defendant pursuant to that warrant. Therefore, even though the defendants in those cases had been unlawfully stopped or questioned, the searches at issue had been conducted as lawful searches incident to arrest. Here, the search took place *before* [the officer] had any reason to believe that he had cause to arrest defendant. It was not a search incident to a lawful arrest but, rather, an unlawful search that preceded a lawful arrest."

Defendant asserts, and we agree, that the present case is not materially distinguishable from *Taylor*. The state does not argue otherwise. Rather, the state cross-assigns error to a number of other determinations of the trial court concerning the search.[4] We turn to each of the state's cross-assignments of error in turn.

■     First, the state asserts that the trial court erred in determining that Evans committed a statutory violation by asking Christensen for her driver's license, registration, and proof of insurance. However, whether the trial court was correct in concluding that *that* was a statutory violation is not dispositive in this case because, as the state acknowledged in the trial court, and again on appeal, Evans's "request for consent to search was impermissible under *Dominguez-Martinez*[.]"[5] Where the state conceded that there was a statutory violation, it is scarcely in a position to cross-assign error to the trial court's determination of when that statutory violation occurred, at least under circumstances such as these, where the evidence that defendant seeks to suppress

---

[4] It was not necessary to raise those arguments in the form of "cross-assignments of error." *See generally State v. Aman*, 164 Or App 348, 352 n 4, 991 P2d 1096 (1999) (discussing when cross-assignments of error are appropriate).

[5] When the state made that concession in the trial court, it was in the context of arguing that Ballot Measure 40, which the Supreme Court subsequently ruled unconstitutional, required that the evidence be admitted because it was not gathered in violation of the United States Constitution.

was discovered after *either* of the supposed statutory violations. We reject the state's first cross-assignment of error without further discussion.

■ In its second cross-assignment of error, the state "challenges the trial court's conclusion that Christensen's consent to a search of her vehicle was invalid under ORS 810.410(3)(b)[.]" The state elaborates: "[B]ecause the alleged violation was only as [to] Christensen, defendant may not challenge it. Further, because Christensen's consent was given voluntarily, it was valid under Oregon and federal constitutions." Any error in the trial court's conclusion that the driver's consent was invalid under ORS 810.410(3)(b) was invited error, given the state's concession at trial that the officer's request for consent to search was impermissible under *Dominguez-Martinez*.[6]

■ In its third and fourth cross-assignments of error, the state asserts that the trial court erred in rejecting its arguments that the evidence in question inevitably would have been discovered in the course of a valid inventory. As noted above, Evans searched the vehicle and the gym bag inside the vehicle, found a controlled substance in the gym bag, and then arrested defendant and Christensen for possession of a controlled substance. He did, however, ultimately impound and inventory the vehicle after he arrested both defendant and Christensen. *Ray*, 164 Or App at 148. The trial court rejected the state's argument that the contents of the gym bag need not be suppressed because they inevitably would have been discovered in the course of a proper inventory conducted pursuant to a written inventory policy.

We accept for purposes of this case that, had he not conducted the unlawful search of the gym bag that resulted

---

[6] In any event, as the state acknowledged in the trial court, *Dominguez-Martinez* squarely held that, if an officer exceeded his or her authority under ORS 810.410, evidence found in a search is to be suppressed, regardless of whether the officer obtained consent to the search. 321 Or at 214. Moreover, the state's summary argument on appeal that the statutory violation was "only as to Christensen, [and] defendant may not challenge it" was not raised below and, regardless of preservation, appears to be at odds with *Dominguez-Martinez*. This case is factually similar to *Dominguez-Martinez*, in that the consent to search in *Dominguez-Martinez*, like the consent to search here, was obtained from a person other than the defendant. *Id.*

in defendant's and Christensen's arrest for possession of controlled substances, Evans nonetheless would have impounded and inventoried the vehicle because of Christensen's lack of driving privileges and insurance. The question, then, is whether the inventory policy in question would authorize the search of the gym bag.

The policy in question authorizes the inventory of property and the contents of open containers in an impounded vehicle. The policy stated: "unless otherwise provided in this Chapter, closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes." The state does not argue on appeal that the closed gym bag could have been opened pursuant to that portion of the policy. Rather, the state argues that the section concerning vehicle inventories is not controlling and, instead, relies on the provision of the inventory policy concerning inventories of "the personal property in the possession of a person taken into police custody." That portion of the policy permits the search of closed containers that are "to be placed in the immediate possession of [the arrestee] in the secure portion of a custodial facility or secure police holding room," as well as closed containers that are "designed for carrying money and/or small valuables on or about the person. That includes, but is not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs."

Implicit in the state's argument is a suggestion that a gym bag is like a purse or a wallet, and is designed for "carrying money and/or small valuables." We do not reach that argument, because we do not believe that the part of the policy concerning inventory of "personal property in the possession of a person taken into police custody" is applicable. As noted above, defendant was arrested after he left the vehicle Christensen was driving. At all relevant times, the gym bag was in the vehicle that ultimately was impounded and towed; there is no evidence that defendant was carrying the gym bag at *any* time. The gym bag thus was "in the vehicle," rather than "in the possession of a person taken into police custody."

In sum, the inventory policy contains two different provisions: one concerning inventory of closed containers in vehicles to be impounded; the other concerning "personal

property in the possession of a person taken into police custody," including closed containers. Those provisions are mutually exclusive. If the closed container is in the impounded vehicle, it is not, at the same time, in the possession of the person in police custody. Likewise, if the closed container is in the possession of the person in police custody, it necessarily is not in the impounded vehicle. The gym bag was in the vehicle. Assuming that the doctrine of "inevitable discovery" applies here, it would apply to the "inevitable discovery" of the gym bag in the vehicle in the course of an inventory *of the vehicle*. The vehicle inventory provisions of the inventory policy, however, prohibit the opening of closed containers such as the gym bag. Thus, the trial court correctly rejected the state's argument that the evidence found in the gym bag need not be suppressed on the ground that it inevitably would have been discovered in a valid inventory.

Reversed and remanded.