Argued and submitted August 6, reversed and remanded November 28, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PAULETTE ANN WASHBURN,
*Defendant-Appellant.*

Washington County Circuit Court
D044862M; A127917

173 P3d 156

Steven Griffin argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Elizabeth A. Gordon, Assistant Attorney General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of endangering the welfare of a minor, her three-year-old child, by permitting the child to be "in a place where unlawful activity involving controlled substances is maintained or conducted." ORS 163.575(1)(b). On appeal, she assigns error to the trial court's denial of her motion to suppress evidence resulting from the arresting deputies' search of her residence. Her argument is that the evidence—that is, the controlled substances—was found after the child's father consented to a search of the residence, and that the consent was obtained by exploiting a prior unlawful search. We agree with defendant. We therefore reverse and remand.

The relevant facts are undisputed. Deputies Bowman and Rockwell, as part of their routine foot patrol in a high-crime area, noticed a partially opened door to a unit in a building variously described as a hotel, motel, or apartment building. Because open doors in that area were unusual, and because the building had a bad reputation, the deputies knocked and identified themselves. Nobody answered. The knocking caused the door to open somewhat wider, and the deputies saw toys inside that were appropriate for a toddler-aged child. They could also hear what sounded like a television or radio. Still nobody responded. At that point, a motel employee came by and told the deputies that the tenants in the room included a couple and a child but, as one of the deputies testified, "she wasn't sure if there was somebody in there currently." After approximately five minutes of knocking, the deputies entered the room. Inside, they found it to be unkempt, messy, and smelly, but they determined that there was "no other reason to continue" their investigation—until they discovered a young child asleep on a bed.

The deputies then left the room. Standing outside, they discussed what to do about the unsupervised child. As they were talking, a man approached. The deputies asked him if the room was his, and he told them that it was. He also told them, in response to their question, that he was the child's father. One of the deputies then told the man, Buchholtz, that leaving a child in the room was dangerous, in light of the room's condition and its location. The deputies

then asked Buchholtz if they could enter the room to discuss the situation, and he replied, "Sure." While they were in the room for the second time, the deputies saw drugs and drug paraphernalia near the child. They asked Buchholtz to call the child's mother, defendant; he did so, and she returned. She was subsequently charged with endangering the welfare of the child by allowing him to be in a place where drug activity occurred.[1]

In her pretrial motion to suppress, defendant argued that the deputies' first entry into the room was an unlawful search and that they exploited information obtained in that search—knowledge that a child was in the room—to obtain consent to enter the second time. Therefore, she maintained, the evidence that the deputies discovered in the room had to be suppressed. The trial court denied defendant's motion, ruling that, although the first search was unlawful, the second resulted from the voluntary consent of Buchholtz. On appeal, defendant renews the arguments she made below. In response, the state concedes that the first search was unlawful, but argues that, because the second search was based on facts obtained independently of the first search, and because the connection between the first illegality and the subsequent consent was tenuous at best, the evidence was not inadmissible.

■■■ Warrantless searches such as the ones in this case are presumed to be unlawful under Article I, section 9, of the Oregon Constitution. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). The state can rebut that presumption by showing that the search fits into "one of the few specifically established and carefully delineated exceptions to the warrant requirement." *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). Below, the state argued that the first search fit within the "emergency aid" exception, which applies when, among other requirements, the police have reasonable grounds to believe that a life-threatening emergency exists that requires their immediate assistance. *State v. Follett*, 115 Or App 672, 680, 840 P2d 1298 (1992), *rev den*, 317 Or 163 (1993). The trial court rejected that contention. On appeal, the state concedes that the trial court's rejection was correct,

---

[1] Charges against Buchholtz are not at issue in this appeal.

and we agree. The deputies did not testify that they believed a life-threatening situation existed or that a crime justifying warrantless entry had taken place, and the facts would not support such a belief in any event.

Rather, the state now relies on the other argument that it made below: the evidence was discovered during the second search, which fit within the consent exception to the warrant requirement. Defendant, for her part, concedes that Buchholtz had authority to consent to the search of the room because he and defendant shared " 'a common authority over or other sufficient relationship to the premises.' " *State v. Carsey*, 295 Or 32, 39, 664 P2d 1085 (1983) (quoting *United States v. Matlock*, 415 US 164, 171, 94 S Ct 988, 39 L Ed 2d 242 (1974)). Defendant also concedes that Buchholtz's consent was voluntary, in the sense that his will was not "overcome by police coercion." *State v. Hall*, 339 Or 7, 27, 115 P3d 908 (2005). Rather, defendant relies on the argument that the consent was "insufficient to establish the admissibility of [the] evidence" because the "state cannot prove that the consent was independent of, or only tenuously related to, any preceding violation of the defendant's rights under Article I, section 9." *Id.* We agree with defendant.

Her argument follows from the Supreme Court's definitive explanation of the relationship between an unlawful search and subsequently obtained consent in *Hall*:

> "[A]fter a defendant establishes the existence of a minimal factual nexus—that is, at minimum, the existence of a 'but for' relationship—between the evidence sought to be suppressed and prior unlawful police conduct, the state nevertheless may establish that the disputed evidence is admissible under Article I, section 9, by proving that the evidence did not derive from the preceding illegality. To make that showing, the state must prove that either (1) the police inevitably would have obtained the disputed evidence through lawful procedures even without the violation of the defendant's rights under Article I, section 9; (2) the police obtained the disputed evidence independently of the violation of the defendant's rights under Article I, section 9; or (3) the preceding violation of the defendant's rights under Article I, section 9, has such a tenuous factual link to

the disputed evidence that that unlawful police conduct cannot be viewed properly as the source of that evidence."

339 Or at 25 (citations omitted).

■    The undisputed facts in this case establish that, "but for" the first entry, the second entry would not have occurred. The deputies remained interested in the residence and asked Buchholtz for consent to enter a second time only because they saw the child during the first, unlawful, entry. But for that sighting, their intention would have been "just to leave and call it good at that point." That fact shifts the burden to the state, and the state does not carry it.

■    The state argues, first, that the deputies reentered the room based on information that they had obtained independent of the first entry: Deputy Bowman

> "knew the [building] was [in] a dangerous neighborhood; he received information that a child lived there, saw the child's toys, heard music, and believed that no adults were present. Because no one answered the door, it seemed unlikely that adults were there. He first asked [Buchholtz] if they were in front of his room. Only then, did the deputy merely ask if that was [Buchholtz's] child in the room."

The problem with this argument, however, is that the record contains no evidence to support it. Neither officer testified that he would have asked to reenter the room based only on the information that the state recites. Indeed, the same evidence that in this instance establishes "but for" causation— testimony that the officers sought reentry and therefore discovered the evidence only because of what they saw when they entered the room the first time—defeats the state's argument that they would have sought reentry even without having seen the child.[2]

■■    The state's second argument is that the causal connection between the unlawful first entry and Buchholtz's consent was too tenuous to justify suppression. We reject that

---

[2] If the state's argument is that the independently obtained information would have justified a lawful reentry without consent, that argument cannot be reconciled with the state's concession, with which we agree, that the *first* entry—which occurred when the officers had all of that information—was unlawful.

argument as well. The requisite causal connection can be established in one of two ways:

"A causal connection requiring suppression may exist because the police sought the defendant's consent solely as a result of the knowledge of inculpatory evidence obtained from unlawful police conduct. A causal connection requiring suppression may exist because the unlawful police conduct, even if not overcoming the defendant's free will, significantly affected the defendant's decision to consent. Although determining the existence of such a causal connection requires examination of the specific facts at issue in a particular case, we view several considerations to be relevant to that determination, including (1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstances—such as, for example, a police deputy informing the defendant of the right to refuse consent—that mitigated the effect of the unlawful police conduct."

*Id.* at 35. In this case, the evidence as described above clearly establishes that the deputies sought consent "solely as a result of the knowledge of inculpatory evidence" obtained in the first entry. Further, the time between the two searches was short, five minutes at most; no intervening circumstances occurred; and no mitigating circumstances occurred. Additionally, the deputies "traded on," or exploited, the discoveries made during the first search in order to obtain Buchholtz's consent. They referred to both the unattended child and the condition of the room immediately before asking him if they could enter in order to further discuss the situation.

In sum, the first entry was an unlawful search. But for that search, the deputies would not have sought consent for a reentry. The state has not shown that the second entry would (or could) have occurred based on independently obtained information, nor that the connection between the unlawful search and the subsequent consent was attenuated. Defendant's motion to suppress should have been granted.

Reversed and remanded.