Submitted May 27, affirmed December 16, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LANCE EDWARD PHILLIPS,
*Defendant-Appellant.*

Washington County Circuit Court
C071362CR; A136611

222 P3d 738

Peter Gartlan, Chief Defender, and Travis S. Eiva, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Susan G. Howe, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals a judgment of conviction for possession of a controlled substance. ORS 475.840(3)(b). He assigns error to the denial of his motion to suppress evidence obtained after he offered to allow an officer to search his vehicle. As he did at trial, he argues that the discovery of evidence resulted from a violation of his rights under Article I, section 9, of the Oregon Constitution. The state responds that the encounter between defendant and the police officer was not a constitutionally significant interference with his liberty and, in the alternative, that the causal link between any unlawful police conduct and the discovery of the evidence was so attenuated that the evidence was nonetheless admissible. We agree with the state's alternative argument, and we therefore affirm.

The relevant facts are not in dispute. While on patrol, Hillsboro Police Sergeant White saw defendant driving slowly through a restaurant parking lot that White knew was the site of several recent vehicle break-ins. As defendant drove by White's patrol car, he glanced at White and then quickly looked away. White found defendant's behavior "very odd," like that of a child "getting caught with [his] hand in the cookie jar" or a person who is "in the wrong place at the wrong time." Upon spotting White, defendant drove out of the lot. White followed him.

After approximately one mile, defendant turned right into the Intel campus parking lot. White continued straight past the campus entrance and made the next right turn. In his rearview mirror, White saw defendant make a U-turn. White decided to turn back and continue following defendant because he thought that defendant might be "trying to get away." White caught up with defendant as defendant was approaching a guarded traffic kiosk that controlled a barrier gate across the road. Defendant stopped at the gate, got out of his vehicle, retrieved a box from the backseat, and started toward the kiosk. White parked his patrol car directly behind defendant's vehicle, blocking defendant's exit, and approached defendant on foot. White, defendant, and the kiosk security guard, who had also started toward defendant

on foot, met approximately six feet from where defendant had parked.

White told defendant that there had been a "recent rash of break-ins" at the restaurant defendant had left and that "the look [that defendant had given him] and [defendant's] cruising the lot made [him] rather suspicious." Defendant laughed and responded that he worked for the Jiffy Lube across the street from the restaurant and would often keep an eye on his employees from the restaurant parking lot. He explained to White that he was at Intel to distribute Jiffy Lube promotional coupons, which were inside the box that he was holding, to Intel employees and that he had intended to check with the kiosk guard about where to leave them. White then asked defendant if he would mind providing his name and birth date. Defendant orally provided both, and White recorded that information in a notebook. Defendant told White that he would "keep his eyes open" in the restaurant parking lot for perpetrators. That conversation lasted approximately one minute. White thanked defendant for his time, returned to his patrol car, backed out from behind defendant's vehicle, and parked in a different spot 30 to 40 feet away. Defendant continued to talk to the kiosk guard.

White then ran defendant's information through the mobile data terminal in his patrol car and learned that defendant's license was suspended and that he was on parole for unauthorized use of a vehicle, burglary, and weapons charges. At that point, White believed that he had probable cause to stop defendant for driving while suspended.

Meanwhile, defendant had returned to his vehicle and started out of the lot. From his patrol car, White "waved [defendant] over." Defendant got out of his vehicle and walked up to White's open driver's side window. White told defendant that "burglaries are similar to vehicle break-ins" and asked him "if he had any property in his car that did not belong to him that might belong to someone else" or "any guns." In response, defendant offered to allow White to search his vehicle. In the ensuing search, White found the methadone that is the evidence at issue in this case.

Defendant was charged with possession of a controlled substance. ORS 475.840(3)(b). Before trial, he moved to suppress the evidence found in his vehicle on the ground that it derived from an unlawful stop. In his motion, he argued that White had stopped him without reasonable suspicion in violation of Article I, section 9, of the Oregon Constitution[1] when White (1) parked his patrol car behind defendant's vehicle, blocking defendant's exit; (2) told defendant that there had been a "rash of break-ins * * * at the [restaurant parking lot where he'd seen defendant]" and that defendant's "look" and "cruising the lot" made him appear "rather suspicious"; and (3) asked defendant for his name and date of birth. Defendant also argued that White unlawfully had extended a lawful traffic stop when, after "wav[ing] defendant] over," White asked defendant "if he had any property in his car that did not belong to him that might belong to someone else" or "any guns." The trial court denied defendant's motion, concluding that no stop had occurred. After a trial to the court on stipulated facts, defendant was convicted.

On appeal, defendant renews the arguments that he made before the trial court. We review for errors of law, deferring to the trial court's factual findings where there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

The state does not contend that White, when he approached defendant, had a reasonable suspicion that defendant had engaged in criminal activity. It contends, rather, that no suspicion was necessary, because the encounter between White and defendant was not a stop. We readily reject that argument. White parked his car so as to prevent defendant from driving away, questioned him about illegal activity, and requested his name and birth date. The state argues that, because defendant was not *in* his blocked car, he remained free to leave, that is, to walk away, presumably abandoning his car at the gated and closed entrance to a

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

corporate campus. That argument strains the concept of freedom beyond its breaking point. The information, therefore, was obtained during an unlawful detention. *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991) (stop occurs when officer intentionally and significantly restrains a person's liberty); *see also* ORS 133.693(4) (state has burden of proving validity of warrantless search).

■■ White subsequently used that information to discover that defendant was driving while suspended, the fact on which the subsequent encounter was based and that therefore led to the discovery of the disputed evidence. Thus, we conclude that, but for the unlawful stop, White would not have discovered the drugs. The state, as an alternative to the argument that no unlawful stop occurred, argues that, even in such circumstances, and even if, but for the unlawful stop, the evidence would not have been discovered, the evidence is nonetheless admissible if the connection between the stop and the discovery of the evidence is so attenuated that the police conduct cannot be viewed properly as the source of the evidence. That is a correct statement of the law. *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). Further, the Supreme Court has held that such an attenuated connection exists where a defendant spontaneously volunteers to allow a search without any police prompting. *Id.* at 34 (citing *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), and *State v. Kennedy*, 290 Or 493, 624 P2d 99 (1981)). In *Rodriguez*, 317 Or at 29-30, a government agent presented the defendant with an arrest warrant that may have been unlawful, informed the defendant of his rights to remain silent and to have counsel, and then asked the defendant whether he had any drugs or guns in his apartment. The defendant responded, "No, go ahead and look." *Id.* at 30. In *Kennedy*, 290 Or at 495-96, two narcotics officers approached the defendant in an airport and informed him that they had information that he might be in possession of illegal drugs. The defendant responded by asking the officers if they would like to search his luggage. *Id.* at 496. In both cases, the defendants' offers to allow a search without any police prompting "mitigat[ed] the effect of the unlawful police conduct." *Hall*, 339 Or at 34. Accordingly, suppression was not required. *Id.*

The circumstances in this case are similar to those in *Rodriguez* and *Kennedy*. White testified at the suppression hearing, without contradiction, as follows:

"[WHITE:]   * * * I told [defendant] that burglaries are similar to vehicle break-ins as far as what people do, and asked him if there was—if he had any property in his car that did not belong to him that might belong to someone else.

"[ATTORNEY:]   And did he—

"[WHITE:]   I also asked him if he had any guns in the vehicle.

"[ATTORNEY:]   Did he offer to allow you to search his vehicle?

"[WHITE:]   Yes, Ma'am.

"[ATTORNEY:]   And is that something actually he offered to you?

"[WHITE:]   Yes, ma'am.

"[ATTORNEY:]   And in response to your question?

"[WHITE:]   Yes, ma'am."

Defendant's unprompted offer to allow White to search his vehicle sufficiently severed the causal connection between the unlawful police conduct and the discovery of the evidence. It follows that the unlawful police conduct cannot properly be viewed as the source of that evidence.

Affirmed.