Argued and submitted July 31, 2008, affirmed January 28, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN CLIFTON HINDS,
*Defendant-Appellant.*

Jackson County Circuit Court
036372FE; A132757

202 P3d 187

Rebecca Duncan, Chief Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Michael R. Washington, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Richardson, Senior Judge.

ROSENBLUM, P. J.

## ROSENBLUM, P. J.

Defendant appeals his conviction for possession of a controlled substance. *Former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). The only physical evidence introduced by the state was a pipe with cocaine residue on it found in defendant's jacket pocket. Before trial, defendant moved to suppress that evidence. On appeal, he argues that the trial court erred in denying his motion to suppress, because he gave his consent to a search while unlawfully stopped without reasonable suspicion of criminal activity. The trial court denied the motion after concluding that defendant was not stopped when a police officer asked for and obtained defendant's consent to the pat-down search that led to the discovery of the pipe. The state concedes that the trial court erred in concluding that there was no stop, but it contends that the link between the stop and defendant's consent is too tenuous to require suppression. We need not determine whether defendant was stopped, because, even if he was, we agree with the state that suppression is nonetheless not required. Accordingly, we affirm.

The relevant facts are not in dispute. On December 21, 2003, at approximately 1:40 a.m., Officers Strouse and Brown of the Medford Police Department observed defendant and a friend walking near a bowling alley parking lot. The weather was cold that night and defendant and his friend were wearing bulky winter jackets. Both men were walking with their hands in their pockets. Strouse did not recognize defendant or his friend and decided to contact them. Brown pulled the patrol car over, and Strouse got out of the car and asked defendant and his friend if they would mind talking to the officers for a minute. At that point in time, defendant's hands were out of his pockets. Defendant or his friend said, "Sure," and turned around to walk back towards Brown and Strouse.

Strouse told defendant and his friend that "this isn't a stop" and that they were "free to go." Strouse explained that he did not recognize defendant and his friend and just wanted to talk to them. Brown talked to defendant's friend while Strouse talked to defendant. Strouse asked defendant for his name and "basic information." Defendant gave him his

driver's license.[1] Strouse then requested a warrant check. Either while he was running the warrant check or shortly thereafter, defendant began to put his hands back in his pockets. Strouse said to him, "If you don't mind, would you just not put your hands in your pockets while we're here talking? We don't know if you guys have any weapons on you or anything like that." Defendant responded that he wanted to put his hands in his pockets because of the cold weather. Strouse then said,

> "I'm not ordering you not to, I just am worried about my safety. Do you mind if we just check your pockets, pat you down, make sure that you don't have a gun or a knife or anything crazy like that and then you can put your hands in your pockets all you want."

Strouse told defendant that he did not have to allow a pat-down. Defendant nevertheless consented.

Strouse felt what he thought was a pipe in defendant's jacket, and he asked defendant what that object was. Defendant said that he did not know. Strouse then asked defendant for consent to remove the object from defendant's pocket. Defendant said, "Sure, go ahead." Strouse removed the object and saw that it was a pipe with what appeared to be burned cocaine residue in it. Strouse arrested defendant for possession of a controlled substance.

Before trial, defendant moved to suppress the cocaine pipe evidence, arguing that his consents to the pat-down and the subsequent search of his pocket were invalid as the unattenuated products of the exploitation of an unlawful stop without reasonable suspicion of criminal activity. The trial court denied the motion to suppress after concluding that defendant was not stopped by Strouse and, therefore, that reasonable suspicion was not necessary:

> "This was an encounter. They didn't cause [defendant or his friend] to come to them, they didn't beckon them over and they just engaged in a conversation. Although they apparently one way or another [obtained] the driver's

---

[1] It is not clear from the record precisely when defendant gave his license to Strouse, whether Strouse asked for the license or defendant offered it to him, or whether Strouse returned the license at any point during the encounter.

license of [defendant], I think that was probably a consensual—we don't know whether he just handed it to him or not, but even assuming that the officer asked if he could see his license, I think it was consensual. My guess is—I know that they didn't seem to pin it down, but just figuring out how long this took is that this probably was—if we sat here and watched the clock, I bet all this occurred within a minute and a half or two minutes up to the point of the seizure.

"You know, the ruling in [*State v. Hall*, 339 Or 7, 115 P3d 908 (2005),] is whether his liberty was restrained in light of the totality of the circumstances. And my initial feeling at this point is that his liberty was not restrained in light of the totality of the circumstances. I think it was a friendly encounter, you know, good terms, not intimidating. There was an indication that they probably told them it wasn't a stop, that they were free to go, they'd just like to talk to them. And I think that a reasonable person wouldn't feel that their liberty was being restrained in light of this—the totality of these circumstances.

"Since we don't have an illegal stop then the consent would be valid."

Following the court's denial of his motion to suppress, defendant entered a conditional guilty plea under ORS 135.335(3).[2]

On appeal, defendant renews his argument that he was stopped without reasonable suspicion and that the unlawful stop caused him to consent to the patdown and subsequent search. The state now concedes that defendant was illegally stopped without reasonable suspicion, but it asserts that the trial court's denial of defendant's motion to suppress should nevertheless be affirmed because defendant's consent to the request for a search was only tenuously linked to the unlawful stop.

We review the trial court's denial of a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d

---

[2] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

421 (1993). We are bound by the trial court's findings of fact where the evidence supports those findings. *Id.* When a defendant seeks to suppress evidence obtained in a consensual search as a product of exploitation of a prior police illegality, the defendant must establish "a minimal factual nexus between unlawful police conduct and the defendant's consent * * *." *Hall*, 339 Or at 34-35. If the defendant does so, "the state has the burden to prove that the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct." *Id.* at 35.

■     We need not determine whether defendant's encounter with Strouse constituted an unlawful stop, because, even assuming that it did and, furthermore, that defendant established a minimal factual nexus between the stop and his decision to consent, we conclude that the state proved that the link was too tenuous to require suppression. Deciding whether the state has proved that a defendant's consent was independent of, or only tenuously related to, unlawful police conduct requires a fact-specific inquiry into the totality of the circumstances. *Id.*

> "In *Hall*, where the defendant's consent to search followed an unlawful stop, the court recognized several considerations relevant to determining whether exclusion is required to vindicate a defendant's rights under Article I, section 9. *Hall*, 339 Or at 35, 35-36 n 21. Those considerations include: (1) the temporal proximity between the unlawful police conduct and the challenged evidence; (2) the existence of any intervening circumstances—such as the provision of *Miranda* warnings before asking about drugs and weapons; and (3) the presence of any circumstances that mitigated the effect of the unlawful police conduct—such as informing a defendant of the right to refuse to comply with an officer's request. *Id.* at 35."

*State v. Thompkin*, 341 Or 368, 380, 143 P3d 530 (2006).

Here, although the temporal proximity was close, Strouse told defendant that he did not have to consent to a patdown—precisely the sort of mitigating circumstance that the Supreme Court identified in *Hall* and *Thompkin*.

Defendant takes the position that Strouse's statement was not truly mitigating, asserting that the officer

effectively told him that, if he did not consent to a search, he could not put his hands in his pockets, which would have been an unpleasant option, given the cold weather. Defendant refers to Strouse's statement, "Do you mind *if* we just check your pockets, pat you down, make sure that you don't have a gun or a knife or anything crazy like that and *then* you can put your hands in your pockets all you want." (Defendant's emphasis.) In the abstract, it might have been reasonable for defendant to construe Strouse's statement as giving him a choice between consenting and having cold hands. However, Strouse also told defendant that he was *not* ordering him not to put his hands in his pockets. In light of that statement, we conclude that defendant was not put in the position of having to choose between his personal comfort and consenting to a search. Strouse made clear that defendant was not required to comply with either the request not to put his hands in his pockets or the request for consent to a search.

In short, we conclude that Strouse's statements telling defendant that he did not have to consent to a patdown and that he was not ordering defendant not to put his hands in his pockets mitigated the effect that an unlawful stop might have had on his decision to consent to the patdown. In our view, that mitigating effect outweighs the temporal proximity of the stop—assuming there was one—and defendant's consent. It follows that the connection between the stop and defendant's consent is too tenuous to require suppression of the evidence. The trial court did not err in denying the motion to suppress.

Affirmed.